**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

BRAD NEWKIRK,

                Plaintiff,

vs.

GKN ARMSTRONG WHEELS, INC. and
JOHN DOES,

        Defendants.

No. C15-3127-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
GKN ARMSTRONG WHEELS,
INC.'S PARTIAL MOTION TO
DISMISS PLAINTIFF'S AMENDED
PETITION OR, IN THE
ALTERNATIVE, FOR SUMMARY
JUDGMENT**

———————————————

**TABLE OF CONTENTS**

I.   **INTRODUCTION AND BACKGROUND** ..................................................... 2
    A.   *Factual Background* ............................................................................ 2
    B.   *Procedural Background* ...................................................................... 7

II.   **LEGAL ANALYSIS** ............................................................................................. 8
    A.   *Summary Judgment Standards* ......................................................... 8
    B.   *Newkirk's Title VII Reverse Race Discrimination Claim* ........................ 13
        1.   *Is a Title VII reverse race discrimination claim
            cognizable?* ................................................................................ 13
        2.   *Is Newkirk's reverse race discrimination claim timely?*
            ..................................................................................................... 15
            a.   *Did the original Petition contain a reverse race
                discrimination claim?* ............................................................ 15
            b.   *Does Newkirk's reverse race discrimination
                claim relate back?* ................................................................. 16
    C.   *Newkirk's Promissory Estoppel Claim* ............................................ 20
        1.   *Clear and definite promise* ..................................................... 20
        2.   *Reasonable reliance* ................................................................ 23
    D.   *Newkirk's Wrongful Termination Claim* ........................................ 24
    E.   *Newkirk's Defamation Claims* ......................................................... 27

    ***F.***     ***Newkirk's Negligence Claims*** .................................................................... *32*
    ***G.***     ***Newkirk's Claims of Negligent Infliction of Emotional***
        ***Distress*** ....................................................................................................... *34*
    ***H.***     ***Newkirk's Intentional Infliction of Emotional Distress Claim***
        ....................................................................................................................... *36*
    ***I.***     ***Newkirk's Invasion of Privacy Claim*** ......................................................... *39*
***III.***     ***CONCLUSION*** ...................................................................................................... *43*

Was a white employee discharged and discriminated against because of his age, race, disability, or possible workers' compensation claim, or was he fired for making an inappropriate comment?  On its motion for summary judgment, the employer contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on nearly all of the employee's claims.  The employee contends that he is entitled to present to a jury his Title VII claims, as well as his Iowa common law claims.  Thus, I must determine which, if any, of the plaintiff's challenged claims should go to a jury.

## I.    INTRODUCTION AND BACKGROUND

### A.    Factual Background

I set out only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning defendant GKN Armstrong Wheels Inc.'s partial motion for

summary judgment and resistance to it.[1]  At least for the purposes of summary judgment, the facts recited here are undisputed.[2]  I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

---

[1]Although GKN labeled its motion as motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it has proceeded as if it were a motion for summary judgment by submitting documents, an appendix, and a statement of uncontested facts.  Likewise, Newkirk has responded to GKN's motion as if it were a motion for summary judgment.  Accordingly, I will treat GKN's motion as a motion for summary judgment.

[2] Newkirk has submitted his affidavit in resistance to GKN's motion.  However, much of Newkirk's affidavit is based on his information and/or belief, which are insufficient to generate a genuine issue of material fact.  For summary judgment purposes, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).  "Rule 56[c]'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief'—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment." *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002); *see Automatic Radio Mfg. Co. v. Hazeltine Research, Inc*., 339 U.S. 827, 831 (1950) (facts alleged on "information and belief" are not sufficient to create a genuine issue of fact); *Camfield Tires, Inc. v. Michelin Tire Corp*., 719 F.2d 1361, 1367 (8th Cir. 1983) ("Under Rule 56[c], an affidavit filed in support of or in opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient" to create an issue of material fact); *see also SCR Joint Venture L.P. v. Warshowsky*, 559 F.3d 133, 138 (2d Cir. 2009) ("The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'") (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004)); *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 851 (11th Cir. 2000) ("upon information and belief" insufficient); *Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) ("Rule 56[c] precludes consideration of materials not based on the affiant's first hand knowledge."); *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury); *Fowler v. Southern Bell Tel. and Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965) ("knowledge, information and belief" insufficient).

Plaintiff Brad Newkirk was employed by defendant GKN Armstrong Wheels, Inc. ("GKN"). GKN has an Employee Handbook. The Employee Handbook states on its cover in capital letters that: "THIS EMPLOYEE HANDBOOK IS NOT A CONTRACT." Defendant's App. at 22. The Employee Handbook further states, again in all capital letters, on its inside cover that: "THIS EMPLOYEE HANDBOOK DOES NOT CREATE A REAL OR IMPLIED EMPLOYMENT CONTRACT." Defendant's App. at 23. GKN's Employee Handbook also states that GKN "will not tolerate harassment of its employees by anyone, including any . . . employee. . . of GKN" and that this prohibition included harassment "based upon a person's race." Defendant's App. at 33. GKN's Employee Handbook further states that:

> GKN Wheels Armstrong employees should disclose in good faith instances of wrongdoing by other employees at any level with the knowledge that their concerns will be investigated and dealt with properly and sensitively and without fear of reprisal or disciplinary action.

Defendant's App. at 34.[3] Such disclosures "will be promptly and impartially investigated by the Human Resource Manager or other senior GKN manager or designee." Defendant's App. at 34.

GKN's Employee Handbook further sets out the "GKN Code," which is designed to treat "employees justly." Defendant's App. at 70, 76. The GKN Employee Handbook also provides that:

> - All of our companies must operate employment procedures which ensure that all of the principles set out in this Code and GKN's Employment Policy and all applicable laws and regulations are complied with and are appropriate for local circumstances and conditions.

---

[3] GKN's Employee Handbook states in two other places that employees are to report conduct which may lead to "a miscarriage of justice," and that "concerns will be investigated and dealt with properly and sensitively." Defendant's App. at 73 and 87.

- All employment procedures must be fully communicated to and understood and upheld by all employees.

- We will treat all of our employees fairly and all of our companies and employees will ensure that there is no discrimination against any employee or prospective employee on the grounds of gender, sexual orientation, disability, religion, color, race or national or ethnic origin.

- All of our companies will ensure that there is no discrimination against any employee or prospective employee on the grounds of age other than where, in accordance with applicable law, contractual retirement dates are agreed.

- All decisions relating to selection for employment and promotion will be based on ability and merit.

- All of our employees are entitled to work in an environment which respects their human dignity and rights and which are free from all forms of harassment.

- All of our employees are entitled to clear terms and conditions of employment, disciplinary procedures, and effective complaints and consultation process.

Defendant's App. at 71.

GKN's Employee Handbook also states that "[i]t is the responsibility of all GKN companies and employees to ensure that the GKN Code is followed and that the GKN policies which underlie it are complied with. Defendant's App. at 71.

On October 4, 2010, Newkirk signed a Handbook Acknowledgement Receipt that states: "I understand that this employee handbook does not constitute an employment agreement or contract, and that the contents of this document are subject to change and interpretation at the discretion of Management." Defendant's App. at 96.

In May 2014, a GKN employee reported to GKN's human resources department that Newkirk had said "Nigger rig" in that employee's presence. In addition to making a report, the employee made a hotline call complaint to GKN about Newkirk using the phrase, "Nigger rig." Newkirk admitted in a written statement that he has used the phrase, "Nigger rig."[4]

GKN investigated the complaint about Newkirk's statement by interviewing employees. During the investigation, more than one employee confirmed that Newkirk used the phrase "Nigger rig" in the workplace. GKN assessed Newkirk 13 disciplinary points for harassment and terminated Newkirk's employment on May 14, 2014. GKN's Employee Discipline Form issued to Newkirk in conjunction with his termination stated: "Discrimination. GKN has a zero tolerance policy with regard to harassment of employees. You admitted and were witnessed making a racial slur." Defendant's App. at 104.

---

[4]Newkirk, subsequently, offered the following explanation for this admission:

> On the morning of May 14, 2014, I was questioned about an occurrence that had transpired at least three weeks prior. Feeling upset and under a lot of stress, I did not know what to say or how to react. I was asked if I had said the phrase "Ni**er Rigged," and thinking back I actually could not remember that moment what I had said. I was worried and not thinking clearly. Certainly, I wanted to be honest if I had said such a thing, so I said "yeh, [sic] I did, I think, but that was so long ago. I can't remember for sure." Once I had a moment to calm down and focus on the actual events of the day that was in question, I remembered that the entire phrase never actually left my lips.

Defendant's App. at 108.

Newkirk appealed his termination. In his appeal of his termination, Newkirk admitted in his statement to using the phrase, "nigger rigged", but alleges that he might not have said the whole phrase.[5] Newkirk offered the following explanation:

> On the morning in question, I, Mr. Bradley Newkirk, went to the shift meeting at the line side board. At the meeting, Josh Harmon, Dave Schroeder and I were discussing a die. I made a comment that was taken out of context, in an attempt to explain why we were using a die that did not work right. The comment made has been used by many people for generations as figure of speech; although I admit this does not make it any more appropriate. Feeling bad for what had just started to come out of my mouth, I immediately adjusted my comment. The comment I made about a die had been "We Ni *paused* Jimmy Rigged the die" knowing that it was about to sound real bad, I switched it to "Jimmy Rigged". I am not even sure how much of the phrase I actually got out before I stopped and changed what I said. However, according [sic] my recollection, and the recollection of the coworkers present at the time, I actually never finished the statement. This comment was made as a figure of speech and not directed towards any individual. There was no racial intent, it was just a slip of the tongue.

Defendant's App. at 106.

## B.     Procedural Background

On June 15, 2015, Newkirk filed suit in Iowa District Court in and for Emmett County against GKN and John Doe defendants alleging causes of action for age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, the Iowa Civil Rights Act ("ICRA"), IOWA CODE Ch. 216, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; disability discrimination, in

---

[5]Newkirk was accused of using the phrase "nigger rig" but he admitted to using the phrase "nigger rigged."

violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*. (the "ADA"); and pendent state law claims for breach of contract, wrongful termination, defamation, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. On July 7, 2015, GKN removed this case to this federal court asserting federal question jurisdiction, pursuant to 28 U.S.C. § 1441(b). On July 31, 2015, Newkirk filed an Amended Petition in which he alleged the following causes of action: (1) age discrimination, in violation of the ICRA (Count I); reverse race discrimination, in violation of Title VII (Count II); (3) age discrimination, in violation of the ADEA (Count III); (4) disability discrimination, in violation of the ADA (Count IV); (5) promissory estoppel (Count V); (6) wrongful termination (Count VI); (7) defamation (Counts VII and XI); (8) negligence (Counts VIII and XIV); (9) negligent infliction of emotional distress (Count IX); (10) negligent/intentional infliction of emotional distress (Counts X and XII); and (11) invasion of privacy (Count XIII). On November 17, 2015, GKN filed its Rule 12(B)(6) Partial Motion to Dismiss Plaintiff's Amended Petition or, in the Alternative, For Summary Judgment (docket no. 15). On December 2, 2015, Newkirk resisted GKN's motion. GKN, in turn, filed a timely reply.

## II.    LEGAL ANALYSIS

### A.    Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is

no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere

allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, —— U.S. ——, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

In its *en banc* decision in *Torgerson*, the Eighth Circuit Court of Appeals expressly rejected the notion that summary judgment in employment discrimination cases is considered under a separate standard, citing *Reeves* and *Celotex*.[6] Instead, the court held as follows:

---

[6] The Eighth Circuit Court of Appeals had previously recognized, in a number of panel decisions, that summary judgment is "disfavored" or should be used "sparingly" in

> Because summary judgment is not disfavored and is
> designed for "every action," panel statements to the contrary
> are unauthorized and should not be followed. There is no
> "discrimination case exception" to the application of summary
> judgment, which is a useful pretrial tool to determine whether
> any case, including one alleging discrimination, merits a trial.

*Torgerson*, 643 F.3d at 1043. Therefore, I will consider GKN's motion in this employment discrimination case according to the same standards that I would apply in any other civil case.

However, I must first observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task. Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed on a paper record is far more daunting. Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881). Thus, experience teaches that

---

employment discrimination cases. *See Torgerson*, 643 F.3d at 1043 (collecting such cases in an Appendix). The rationales for this "employment discrimination exception" were that "discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and that "intent" is generally a central issue in employment discrimination cases. *See, e.g., Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005) (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). On the other hand, the Supreme Court recognized that, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations.

Employment discrimination and retaliation, except in the rarest cases, are difficult to prove. They are perhaps more difficult to prove today—more than forty years after the passage of Title VII and the ADEA, more than twenty years after the passage of the ADA, and the FMLA—than during the earlier evolution of these anti-discrimination and anti-retaliation statutes. Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987). Indeed, the Fifth Circuit Court of Appeals recognized more than thirty-five years ago, that "[a]s patently discriminatory practices become outlawed, those employers bent on pursuing a general policy declared illegal by Congressional mandate will undoubtedly devise more sophisticated methods to perpetuate discrimination among employees." *Rogers v. EEOC*, 454 F.2d 234, 239 (5th Cir. 1971) (later relied on by the Supreme Court in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986), as one of the principal authorities supporting recognition of a cause of action for hostile environment sexual harassment under Title VII).

My experience suggests the truth of that observation. Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination and retaliation cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination and retaliation plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination or retaliation are proportional to the caliber of the employee, discrimination or retaliation against the best employees is the least cost effective. *See, e.g., id.* Rather, discrimination and

retaliation plaintiffs tend to be those average or below-average workers—equally protected by Title VII, the ADA, the ADEA—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id.* On the other hand, it is also relatively easy for disgruntled former employees to claim a protected basis under federal and state anti-discrimination laws as a reason for their discharge when in fact they played no part. This is true even when the former employee and/or their counsel believe they did. This is what makes deciding these issues on a paper record daunting.

Consequently, I turn to consider the parties' arguments for and against summary judgment with both the legal standards for summary judgment and the teachings of experience in mind.

### B.    Newkirk's Title VII Reverse Race Discrimination Claim

GKN attacks Newkirk's Title VII reverse race discrimination claim on two grounds. First, GKN argues that there is no such cause of action under Title VII because that act is silent about reverse discrimination. Second, GKN contends that this claim must also be dismissed as untimely. I will take up each of GKN's arguments in turn.

#### 1.    Is a Title VII reverse race discrimination claim cognizable?

As I mentioned above, GKN contends that Newkirk's reverse race discrimination claim fails to state a claim because Title VII is silent about "reverse" discrimination. In response, Newkirk argues that the United States Supreme Court has explicitly recognized a claim for reverse race discrimination under Title VII and cites to the Court's decision in *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976). In *McDonald*, the district court held that "the dismissal of white employees charged with misappropriating company property while not dismissing a similarly charged Negro employee does not raise a claim

upon which Title VII relief may be granted." *Id.* at 278. The United States Supreme Court unanimously reversed, concluding from the "uncontradicted legislative history" that "[T]itle VII prohibits racial discrimination against the white petitioners in this case upon the same standards as would be applicable were they Negroes . . . ." *Id.* at 280. Since *McDonald,* the Eighth Circuit Court of Appeals, as well as all other Federal Circuit Courts of Appeals, has explicitly recognized so called reverse race discrimination claims. *See Schaffhauser v. United Parcel Serv.*, 794 F.3d 899, 903 (8th Cir. 2015); *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004); *see also Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005); *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004); *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004); *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001); *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1103–1104 (11th Cir. 2001); *Weeks v. Union Camp Corp.*, 215 F.3d 1323, 2000 WL 727771, at *6 (4th Cir. 2000) (unpublished decision); *Byers v. Dallas Morning News*, 209 F.3d 419, 426 (5th Cir. 2000); *Iadimarco v. Runyon*, 190 F.3d 151 (3rd Cir. 1999); *Wilson v. Bailey*, 934 F.2d 301, 304 (11th Cir. 1991); *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983).[7] Accordingly, this segment of GKN's motion is denied.

---

[7]Although all of the Federal Circuit Courts of Appeals have recognized reverse race discrimination claims, they disagree about how to analyze the last factor of the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, "[a] prima facie case of discrimination requires that the plaintiff '(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'" *Schaffhauser*, 794 F.3d at 903 (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)). The Eighth Circuit Court of Appeals as well as the Sixth, Seventh, Tenth, and D.C. Circuit Courts of Appeals all require a reverse race discrimination plaintiff to also show that "'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Schaffhauser*, 794 F.3d at 903 (quoting *Hammer*, 383 F.3d at 724); *see Gore*, 416 F.3d at 592; *Leadbetter,* 385 F.3d at 690; *Hammer*, 383 F.3d

## 2. Is Newkirk's reverse race discrimination claim timely?

GKN, alternatively, argues that Newkirk's Title VII reverse race discrimination claim is untimely because it was filed more than 90 days after he received his right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). Newkirk counters that his Title VII reverse race discrimination claim is timely because his original Petition contained a Title VII claim, although Newkirk concedes that he did not use the word "race" in that claim. Newkirk, alternatively, argues that his Title VII reverse race discrimination claim relates back to the date the original Petition was filed and is, therefore, timely. GKN, in turn, contends that Newkirk's Title VII reverse race discrimination claim does not relate back. I will take up each of these arguments in turn.

### a. Did the original Petition contain a reverse race discrimination claim?

The caption to Count II of Newkirk's original Petition specifically states that the Title VII claim being brought in that count is for "AGE DISCRIMINATION". Petition at 3. The accompanying text states that "Defendant's age was a motivating factor in the discrimination." Petition at 4. Clearly, the specificity of the allegations, combined with the total lack of any reference to race in that count, demonstrates that Count II of Newkirk's original Petition alleged only a claim of age discrimination in violation of Title VII.[8]

---

at 724; *Stover*, 382 F.3d at 1076; *Russell*, 257 F.3d at 818: *Lanphear*, 703 F.2d at 1315. In contrast, the Third, Fifth, and Eleventh Circuit Courts of Appeals all apply an unaltered *McDonnell Douglas* prima facie test in both run-of-the-mill discrimination and reverse discrimination cases. *See Bass*, 256 F.3d at 1103–1104; *Byers*, 209 F.3d at 426; *Iadimarco*, 190 F.3d at 151; *Wilson*, 934 F.2d at 304.

[8] Accordingly, Count II of Newkirk's original Petition failed to state a claim. Title VII prohibits discrimination against an individual on the basis of that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)–2. Age is not a proscribed basis for discrimination under Title VII. *Id.* Thus, Title VII does not provide a remedy against age discrimination. *See Graham v. F.B. Leopold Co.*, 602 F. Supp. 1423, 1424 (W.D. Pa. 1985), *rev'd on other grounds*, 779 F.2d 170 (3rd Cir. 1985). Instead, the ADEA

### b.     Does Newkirk's reverse race discrimination claim relate back?

Newkirk, alternatively, argues that his reverse race discrimination claim relates back to the date he filed his original Petition. GKN argues that the relation back doctrine does not save Newkirk's reverse race discrimination claim because both Newkirk's charge with the EEOC, as well as his original Petition, did not refer to race.

Federal Rule of Civil Procedure 15(c) provides situations in which "[a]n amendment to a pleading relates back to the date of the original pleading." FED. R. CIV. P. 15(c)(1). In particular, Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original pleading." FED. R. CIV. P. 15(c)(1)(B).

Newkirk argues that his claim of reverse race discrimination relates back to his original Petition because "[t]here is a 'common core of operative facts in the two pleadings.'" Plaintiff's Br. at 5 (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3rd Cir. 2004). GKN counters by citing a line of cases for the proposition that "an untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 575 (7th Cir. 1998) (concluding that an amendment containing a claim of disability discrimination did not relate back to the original charge, which alleged age discrimination);

---

is the exclusive federal judicial remedy for claims of age discrimination in employment. *See Tapia-Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir. 2003); *Purtill v. Harris*, 658 F.2d 134 (3rd Cir. 1981); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989); *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997); *Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998), *rev'd on other grounds*, 528 U.S. 1110 (2000); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991). *But see Mummelthie v. City of Mason*, 873 F. Supp. 1293, 1328 (N.D. Iowa 1995) ("where the facts giving rise to the ADEA violation also give rise to a violation of an independent federal right, secured by statute or the Constitution, a plaintiff may pursue either the ADEA or § 1983 remedy or both.").

*see Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878–79 (5th Cir. 2003) (holding that the plaintiff's disability discrimination claim did not relate back to the originally filed charges of race and sex discrimination); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir. 1999) (holding that the plaintiff's amended charge did not relate back because the original charge alleged only race discrimination, while the amended charge included "a new theory of recovery"-retaliation); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996) (holding that the plaintiff's age discrimination claim did not relate back to the originally filed charge of sex discrimination).

The facts of this case differ from those in *Fairchild*. There, plaintiff filed a charge of age discrimination with the EEOC, but did not amend his EEOC discrimination charge to include disability discrimination until after the EEOC's filing deadline had passed, rendering his disability discrimination claim untimely. *Fairchild*, 147 F.3d at 574. Attempting to overcome his belatedness, plaintiff argued that his amended disability discrimination charge related back to his timely filed age discrimination charge with the EEOC. The Seventh Circuit Court of Appeals rejected plaintiff's argument, noting that the plaintiff was alleging "an entirely new theory of recovery," and had not provided any factual nexus to the original age discrimination charge. *Id.* at 575. Thus, the court of appeals did not permit plaintiff's disability charge to relate back to the original charge. *Id.* at 576. *Fairchild* is distinguishable from this case because the plaintiff in *Fairchild* sought relation back pursuant to an EEOC regulation which uses an entirely different relation-back standard from that employed by Rule 15(c). Here, Newkirk never sought to amend his original charge of age discrimination with the EEOC to allege charges of both age and reverse race discrimination.

A plaintiff must file a charge of discrimination with the EEOC prior to bringing suit in federal court. *See* 42 U.S.C. § 2000e-5(f)(1); *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989); *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009). This

requirement gives the EEOC "the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Because the EEOC cannot investigate a claim that it has not been notified about, "[a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner–Denver Co*., 415 U.S. 36, 47 (1974); *see Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994). This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, *Alexander*, 415 U.S. at 44, and of giving the employer some warning of the conduct about which the employee is aggrieved. *See Rush v. McDonald's Corp*., 966 F.2d 1104, 1110 (7th Cir. 1992); *Schnellbaecher v. Baskin Clothing Co*., 887 F.2d 124, 127 (7th Cir. 1989). This rule is not jurisdictional, but rather a condition precedent to bringing a case based on those claims. *See Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 392 (1982). However, because employment discrimination laws are remedial in nature, courts must construe administrative charges "liberally in order to further the[ir] remedial purposes." *Dorsey v. Pinnacle Automation Co*., 278 F.3d 830, 838 (8th Cir. 2002); *see Nichols v. Am. Nat'l Ins. Co*., 154 F.3d 875, 886–87 (8th Cir. 1998). As a result, the Eighth Circuit Court of Appeals has repeatedly recognized that a plaintiff may "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols*, 154 F.3d at 887; *Wedow v. City of Kan. City, Mo*., 442 F.3d 661, 672 (8th Cir. 2006); *Duncan v. Delta Consol. Indus., Inc*., 371 F.3d 1020, 1025 (8th Cir. 2004). Thus, courts "'do not require that subsequently-filed lawsuits mirror the administrative charges.'" *Duncan*, 371 F.3d at 1025 (quoting *Nichols*, 154 F.3d at 887). Nonetheless, "there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which

simply was not made." *Shannon v. Ford Motor Co,*, 72 F.3d 678, 685 (8th Cir. 1996) (internal citation omitted).

Newkirk's EEOC charge alleges he was discharged and discriminated against because of his age. The charge is devoid of any reference to Newkirk's race. I find that discrimination on the basis of race was not part of his EEOC charge and could not reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. *See Bland v. Kansas City, Kan., Cmty. Coll.*, 271 F. Supp.2d 1280, 1283 (D. Kan. 2003) (holding that plaintiff failed to exhaust administrative remedies on claim of race discrimination where plaintiff marked only the box referencing age discrimination on EEOC charge form, and described only alleged violation of ADEA in "particulars" section of form); *see also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (plaintiff's EEOC charges of discrimination based on national origin not related to his age discrimination complaint where date-of-birth field was left blank, age-discrimination box was unchecked, and nothing about plaintiff's description of the charge "would have reasonably lead one to conclude that [he] was a victim of age discrimination"); *Fundukian v. United Blood Servs.*, 18 Fed. Appx. 572, 574 (9th Cir. 2001) (holding that race, sex, and age discrimination claims raised by employee in her Title VII complaint were not like or reasonably related to retaliation charge she had filed with the EEOC); *Thompson v. Fairmont Chicago Hotel*, 525 F. Supp.2d 984, 989–90 (N.D. Ill. 2007) (holding that discrimination based on race was not reasonably related to color). Therefore, Newkirk has provided no notice to the EEOC and GKN that discrimination based on race was an issue for investigation and conciliation efforts. Accordingly, only Newkirk's age discrimination and retaliation claims against GKN may be brought in this federal suit and this portion of GKN's Partial Motion for Summary Judgment is granted.

## C.    *Newkirk's Promissory Estoppel Claim*

GKN next challenges Newkirk's promissory estoppel claim, arguing that it fails as a matter of law.  Specifically, GKN argues that Newkirk cannot establish that it made a clear and definite promise to him.  GKN also contends that Newkirk cannot establish that his reliance on statements in the GKN employee handbook were reasonable.  Newkirk counters that statements in GKN's employee handbook establish these elements of his promissory estoppel claim.  GKN argues that Newkirk's reliance on statements in GKN's employee handbook fails to establish the elements of promissory estoppel.

Under Iowa law, the elements of a claim for promissory estoppel are

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999); *see Kolkman v. Roth*, 656 N.W.2d 148, 156 (Iowa 2003).  "The burden of proof is on the plaintiff to prove an estoppel," and "strict proof of all elements is required."  *Schoff*, 604 N.W.2d at 50; *see National Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989) (holding that the plaintiff has the burden of proving promissory estoppel; "strict proof of all elements is required.").  I will address each of the disputed elements in turn.

### 1.    *Clear and definite promise*

Newkirk argues that GKN's employee handbook expresses clear and definite promises to treat employees fairly, and conduct investigations promptly and impartially.  GKN asserts that its employee handbook did not make such promises.

To establish this element of his promissory estoppel claim, Newkirk must show that GKN made a clear and definite promise.  *Schoff*, 604 N.W.2d at 49.  "A 'promise' is '[a] declaration . . . to do or forbear a certain specific act.'"  *Id*. at 50–51 (quoting BLACK'S

LAW DICTIONARY 1213 (6th ed. 1990)). "A promise is 'clear' when it is easily understood and not ambiguous" and "'definite' when the assertion is explicit and without any doubt or tentativeness." *Id.* at 51 (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 419 (unab. ed. 1993)). Moreover, courts must "not imply a promise from representations made by an employer, but will require strict proof that the defendant promised to do or not to do a specific act, and did not simply state the employer's view or impression of something." *Id.* Finally, the Iowa Supreme Court distinguished the definition of a promise from that of a misrepresentation, that is, "a statement . . . made to convey a particular view or impression of something with the intention of influencing opinion or action." *Id.* at 51. A claim for promissory estoppel cannot lie on a mere misrepresentation:

> Although this distinction may appear to be a technical one, it is of utmost importance. If we do not make a firm and clear distinction between a promise and a representation, discharged employees could simply characterize negligent misrepresentations as promises and thereby avoid our rule that employees may not recover for negligent misrepresentations made by an employer or potential employer. Consequently, we will not imply a promise from representations made by an employer, but will require strict proof that the defendant promised to do or not to do a specific act, and did not simply state the employer's view or impression of something.

*Id.*

Newkirk points to the following statement, contained in GKN's employee handbook, as an unambiguous promise made by GKN to him: "All of our employees are *entitled to clear terms and conditions* of employment, disciplinary procedures, and effective complaints and consultation process." Defendant's App. at 71 (emphasis added). Newkirk argues that the verb "entitled" conveys a promise to GKN employees of the right to clarity in GKN's employee disciplinary measures. Newkirk buttresses his argument by pointing out that the employee handbook further states that: "All of our companies *must operate* employment procedures which ensure that all of the principles set out in this Code

and GKN's Employment Policy and all applicable laws and regulations are complied with and are appropriate for local circumstances and conditions." *Id.* (emphasis added). Newkirk, however, does not site any case holding that language similar to that in the GKN employee handbook constitutes a promise.

GKN argues that these statements are representations and not promises. Language in GKN's employee handbook clearly indicates that the information contained in it is anything but definite. GKN's employee handbook declares: "This document is subject to change and interpretation at the discretion of Management. THIS EMPLOYEE HANDBOOK DOES NOT CREATE A REAL OR IMPLIED EMPLOYMENT CONTRACT." Defendant's App. at 23. The employee handbook goes on to provide the following explanation for its role at GKN:

> Our playbook is this Employee Handbook that contains guidelines for the game. Although, no two situations or opinions are ever exactly the same, this Employee Handbook attempts to provide guidelines for the way GKN Wheels Armstrong will conduct its business. The Employee Handbook should serve as a resource for all employees, but it should also help managers and supervisors treat all employees in a fair and consistent manner.

Defendant's App. at 26. Newkirk acknowledged the non-definitive nature of GKN's employee handbook when he signed a receipt for it that states: "I understand that this employee handbook does not constitute an employment agreement or contract, and that the contents of this document are subject to change and interpretation at the discretion of Management." Defendant's App. at 96. Thus, I conclude that GKN's Employee Handbook does not offer a promise, but rather representative guidelines. To the extent that GKN's Employee Handbook sets out procedures for termination and discipline, these provisions did not create any express or implied contractual rights enforceable by Newkirk. In fact, GKN's Employee Handbook repeatedly disclaimed any intention to create such rights. Because there is no evidence to support a finding of a clear and definite promise, Newkirk's

promissory estoppel claim fails, and I need not discuss the remaining elements of this claim. Nonetheless, I will briefly address the issue of reasonable reliance.

### 2. *Reasonable reliance*

GKN argues that Newkirk could not reasonably rely on the statements contained in GKN's Employee Handbook on account of the disclaimers contained in that document. I agree. In *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277 (Iowa 1995), the Iowa Supreme Court considered the effect of employee handbook disclaimers. *Id.* at 287–89. The court observed that:

> A disclaimer should be considered in the same manner as any other language in the handbook to ascertain its impact on our search for the employer's intent . . . we simply examine the language and context of the disclaimer to decide whether a reasonable employee, reading the disclaimer, would understand it to mean that the employer has not assented to be bound by the handbook's provisions.

*Id*. at 288. The Iowa Supreme Court instructed that such an examination is guided by two factors: "First, is the disclaimer clear in its terms: does the disclaimer state that the handbook does not create any rights, or does not alter the at-will employment status? Second, is the coverage of the disclaimer unambiguous: what is the scope of its applicability?" *Id*. Here, the disclaimers expressly deny that GKN's Employee Handbook forms any promise by GKN. Specifically, GKN's Employee Handbook states, on its cover, in capital letters that: "THIS EMPLOYEE HANDBOOK IS NOT A CONTRACT." Defendant's App. at 22. GKN's Employee Handbook further states, again in all capital letters, on its inside cover that: "THIS EMPLOYEE HANDBOOK DOES NOT CREATE A REAL OR IMPLIED EMPLOYMENT CONTRACT." Defendant's App. at 23. The significance of these disclaimers was not lost on Newkirk. As I previously noted, Newkirk acknowledged the non-definitive nature of GKN's Employee Handbook when he signed a receipt for the handbook that states: "I understand that this employee handbook does not constitute an employment agreement or contract, and that the contents of this document are

23

subject to change and interpretation at the discretion of Management." Defendant's App. at 96. Accordingly, I conclude that any reliance by Newkirk on the representations contained in GKN's Employee Handbook would be unreasonable. Therefore Newkirk also cannot establish the third element of his promissory estoppel claim. Thus, this segment of GKN's Partial Motion for Summary Judgment is granted.

### D. Newkirk's Wrongful Termination Claim

Not every "socially desirable conduct" an employee might engage in is actionable under Iowa's public policy exception. *Jasper*, 764 N.W.2d at 762. Rather, to be actionable, an employee's purported protected conduct must be "clear and well-defined" under Iowa law such "that it should be understood and accepted in our society as a benchmark" activity for which employers cannot fire employees. *Id.* at 763. A well-defined public policy might be embodied in Iowa's legislatively enacted statutes, Iowa's Constitution, or even Iowa's administrative regulations. *Id.* at 763–74. Iowa courts have explicitly recognized the discharge of an employee due to the employee's filing of a workers' compensation claim is contrary to public policy. *See Napreljac v. John Q. Hammons Hotels, Inc.*, 505 F.3d 800, 802 (8th Cir. 2007) (observing that Iowa common law "provides a cause of action for an at will employee who is discharged contrary to public policy, which includes being discharged due to the filing of a workers' compensation claim."); *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990) (recognizing discharge in retaliation for pursuing rights under Iowa workers' compensation laws violates public policy and gives rise to common-law cause of action); *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 353 (Iowa 1989) (same); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560-61 (Iowa 1988) (same).

The elements of a claim of discharge in violation of public policy are: "(1) engagement in a protected activity, (2) adverse employment action, and (3) a causal

connection between the two." *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998); *see Gaston v. The Restaurant Co.,* 260 F. Supp.2d 742, 758 (N.D. Iowa 2003); *Fitzgerald v. Salsbury Chem., Inc*., 613 N.W.2d 275, 282 (Iowa 2000); *see also Davis v. Horton*, 661 N.W.2d 533, 535 (Iowa 2003) (requiring a plaintiff to satisfy the following four factors: "(1) The existence of a clearly defined public policy that protects an activity. (2) This policy would be undermined by a discharge from employment. (3) The challenged discharge was the result of participating in the protected activity. (4) There was lack of other justification for the termination.").

There is no dispute, at least for purposes of summary judgment, that Newkirk can show that he suffered adverse employment action, in that he was fired. *See Fitzgerald*, 613 N.W.2d at 281; *Teachout*, 584 N.W.2d at 299. Thus, the questions, here, are whether or not Newkirk can prove that he engaged in a protected activity and that the adverse action was caused by his protected activity. *See Fitzgerald*, 613 N.W.2d at 281; *Teachout*, 584 N.W.2d at 299. In order to satisfy the "causation" element, "[t]he protected conduct must be the determinative factor in the decision to terminate the employee." *Fitzgerald,* 613 N.W.2d at 289 (citing *Teachout,* 584 N.W.2d at 301–02). Thus, "[t]he causation standard is high, and requires [the court] to determine if a reasonable fact finder would conclude [the employee's protected activity] was the determinative factor in the decision to discharge him." *Id.* "'[T]he protection afforded by anti-retaliatory legislation [or the common law] does not immunize the complainant from discharge for past or present inadequacies, unsatisfactory performance, or insubordination.'" *Teachout,* 584 N.W.2d at 302 (quoting *Hulme v. Barrett*, 480 N.W.2d 40, 43 (Iowa 1992)).

It is not my place on a motion for summary judgment to weigh the evidence and determine the truth of the matter. *See, e.g., Bunda v. Potter*, 369 F. Supp.2d 1039, 1046 (N.D. Iowa 2005). However, here, viewing the record in this case in the light most favorable to Newkirk, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (the court must view all the facts in the light most favorable to the nonmoving party and give that party the

benefit of all reasonable inferences that can be drawn from the facts), Newkirk has not generated a genuine issue of material fact that his potential workers' compensation claim— the protected activity at issue here—was the determinative factor in GKN's decision to fire him. *See Fitzgerald*, 613 N.W.2d at 289. "The causation standard in a common-law retaliatory discharge case is high." *Teachout*, 584 N.W.2d at 299 (citing *Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992)); *accord Fitzgerald*, 613 N.W.2d at 289. A plaintiff must show "[t]he employee's engagement in protected conduct [was] the determinative factor in the employer's decision to take adverse action against the employee." *Teachout*, 584 N.W.2d at 301; *accord Fitzgerald*, 613 N.W.2d at 289.[9] Newkirk merely alleges that he had health problems which were work related and GKN knew of Newkirk's health problems prior to his termination. He does not allege that he ever filed a workers' compensation claim, or threatened to do so. Instead, he also alleges that GKN "knew that there was a potential for [Newkirk] to file for Worker's Compensation." Amended Petition. at ¶ 31. Newkirk does not allege that he was fired to prevent his filing a workers' compensation claim but, instead, alleges that GKN fired him, "in whole or in part" due to his "health problems." Amended Petition. at ¶ 32. While causation generally presents a

---

[9] The Iowa Supreme Court has explained that a "predominant" factor is different from a "determinative" factor:

> A purpose is predominant if it is the primary consideration in making a decision; while other reasons may exist, they are less influential than the predominant purpose. A "determinative factor," on the other hand, need not be the main reason behind the decision. It need only be the reason which tips the scales decisively one way or the other.

*Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d at 686; *see also Teachout*, 584 N.W.2d at 302 & n. 2 (rejecting a rule mandating that protected conduct "be 'the determining or predominant factor' in the employer's decision to take adverse action," holding that the proper standard requires only that "the protected conduct must be the determining factor, not the predominant factor").

question of fact, I find that Newkirk has not generated a genuine issue of material fact as to a causal connection between his termination and his possible pursuit of workers' compensation benefits. Thus, this segment of GKN's Partial Motion for Summary Judgment is also granted.

### E.     Newkirk's Defamation Claims

GKN also seeks summary judgment on Newkirk's defamation claims against it and the John Doe defendants.[10] GKN contends that Newkirk's defamation claims fail as a matter of law because he has not plead the statements with the required specificity. GKN also argues that the challenged statements are substantially true and, therefore, non-actionable. Newkirk argues that I cannot dismiss his defamation claims against the John Does defendants since those claims are not directed at GKN.[11] Newkirk also argues that

---

[10]Newkirk makes two separate defamation claims in his Amended Petition. In Count VII he alleges that he was defamed by another employee at GKN. In Count XI, he alleges that he was defamed by GKN and one or more John Does defendants.

[11]District courts have the power to grant summary judgment when "the party against whom the judgment is entered has had a full and fair opportunity to contest that there are no genuine issues of material fact to be tried and the party granted judgment is entitled to it as a matter of law." *Burlington N. R.R. Co. v. Omaha Pub. Power Dist.*, 888 F.2d 1228, 1231 n. 3 (8th Cir. 1989). Here, although the John Does defendants have not yet appeared, summary judgment may be granted in their favor on the basis of the facts presented by GKN, because all of the defendants are in a similar position as to Newkirk's claims against them and Newkirk has had a full and fair opportunity to respond to the issues underlying GKN's motion. *See Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th Cir. 1992)((holding that district court did not err when, in granting summary judgment for the plaintiff, it also granted summary judgment to a nonmoving crossclaimant because the crossclaimant's "right to judgment turned on the same issues as [the plaintiff's] right to judgment."); *see Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802–03 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant

he has plead the defamatory statements with the required specificity to provide notice to GKN that one or more of its employees defamed Newkirk. Newkirk, alternatively, argues that I should reserve ruling on this portion of GKN's motion until discovery is completed.[12]

---

where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant); *see also Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated).

[12]Newkirk requests that I reserve ruling on this, as well as other portions of GKN's motion, until after discovery is completed. Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)) permits a party opposing summary judgment to request the court defer decision on a summary judgment motion until adequate discovery is completed. *See Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010); *Roak v. City of Hazen*, 189 F.3d 758, 762 (8th Cir .1999); *Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997). The Eighth Circuit Court of Appeals has explained that:

> To obtain a Rule 56[d] continuance, the party opposing summary judgment must file an affidavit "affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."

*Ray*, 609 F.3d at 923 (quoting *Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993)); *see Ballard v. Heineman*, 548 F.3d 1132, 1136–37 (8th Cir. 2008) ("Unless a party files an affidavit under Federal Rule of Civil Procedure 56[d] showing what facts further discovery may uncover, 'a district court generally does not abuse its discretion in granting summary judgment on the basis of the record before it.'") (quoting *Nolan v. Thompson*, 521 F.3d 983, 986 (8th Cir. 2008)); *Roark v. City of Hazen, Ark.*, 189 F.3d 758, 762 (8th Cir. 999) ("When seeking a continuance, however, the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover."); *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 911 (8th Cir. 1999) ("Federal Rule of Civil Procedure 56[d] . . . requires the filing of an affidavit with the trial court showing 'what specific facts further discovery might unveil.'") (quoting *Dulany*, 132 F.3d at 1238).

Thus, the opposing party must "demonstrate how discovery will provide rebuttal to the movant's claims." *Alexander v. Pathfinder, Inc.*, 189 F.3d 735, 744 (8th Cir. 1999). Newkirk, as the party seeking a Rule 56(d) continuance, must do more than simply assert that he may discover additional facts, and must do more even than speculate about what those facts might be. Rather, as I explained in *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 70 F. Supp.2d 944 (N.D. Iowa 1999), "'[i]n moving for relief under Rule 56(f), a party must demonstrate specifically "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."'" *Dethmers Mfg. Co.*, 70 F. Supp.2d at 981 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996), in turn quoting *Willmar Poultry Co. v. Morton–Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975) (1976)). To that end,

> [t]he party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Securities & Exchange Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980), *cert. denied*, 449 U.S. 1082, 101 S. Ct. 866, 66 L.Ed.2d 806 (1981). The rule does not require clairvoyance on the part of the moving party, *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1292 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L.Ed.2d 275 (1994), but the movant is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993). It is not enough simply to assert, a la [the non-movant in the case], that "something will turn up."

*Simmons Oil Corp.*, 86 F.3d at 1144.

The reason underlying such requirements is that "it is well settled that 'Rule 56(f) does not condone a fishing expedition' where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct]." *Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997). This is so, because "'Rule 56[d] is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.'" *Id.* (quoting *United States v. Light*, 766 F.2d 394, 397 (8th Cir. 1985)). Therefore, "'[a] party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise

Under Iowa law, defamation is

> "an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name. A cause of action for defamation is based on the transmission of derogatory statements, not any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property."

*Kiesau v. Bantz*, 686 N.W.2d 164, 175 (Iowa 2004) (quoting *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998)). As I have previously explained, defamation under Iowa law consists of the "twin torts" of "libel" and "slander," where "libel" is defined as

---

required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Duffy*, 123 F.3d at 141 (again quoting *Light*, 766 F.2d at 397); *see Elnashar v. Speedway SuperAmerica*, L.L.C., 484 F.3d 1046, 1054 (8th Cir. 2007); *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006). Furthermore, the court does not abuse its discretion to deny discovery before ruling on a motion for summary judgment if the facts the party seeking a continuance believes it can obtain would not prevent the entry of summary judgment. *See Duffy*, 123 F.3d at 141; *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 797–98 (8th Cir. 1996). Where a party fails to carry its burden under Rule 56(d), "postponement of a ruling on a motion for summary judgment is unjustified." *Humphreys v. Roche Biomed. Labs., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993); *see also Stanback*, 180 F.3d at 912 (quoting *Humphreys*, 990 F.2d at 1081).

Here, Newkirk has failed to file a motion under Rule 56(f) or even to present an affidavit detailing the specific facts he expects to uncover through discovery and how those facts might help him defeat GKN's Partial Motion for Summary Judgment. Moreover, even if I overlooked Newkirk's failure to provide an affidavit, his response to GKN's motion fails to provide the specific facts that discovery would reveal, and explain why those facts would preclude summary judgment. Indeed, Newkirk makes only the sort of "vague assertions that additional discovery will produce needed, but unspecified, facts" that are insufficient to require a continuance. *See Dethmers Mfg. Co.*, 70 F. Supp.2d at 981 (quoting *Simmons Oil Corp.*, 86 F.3d at 1144) (internal quotation marks and citations omitted). Consequently, Newkirk has failed to point to any additional evidence that discovery could uncover which would bear on the merits of GKN's Partial Motion for Summary Judgment. Accordingly, I deny Newkirk's request that I delay consideration of GKN's motion until he has completed his discovery in this case.

malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose the person to public hatred, contempt, or ridicule, or to injure the person in the maintenance of the person's business, and "slander" is defined as oral publication of defamatory material. *Park v. Hill*, 380 F. Supp.2d 1002, 1015 (N.D. Iowa 2005); *Lyons v. Midwest Glazing*, L.L.C., 235 F. Supp.2d 1030, 1043–44 (N.D. Iowa 2002); *accord Kiesau*, 686 N.W.2d at 174; *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004); *Delaney v. International Union UAW Local No. 94*, 675 N.W.2d 832, 839 (Iowa 2004); *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001); *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994). In order to establish a *prima facie* case of defamation, the plaintiff must prove that the defendant "'(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'" *Kiesau*, 686 N.W.2d at 175 (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996)). The Iowa Supreme Court has recognized that:

> There are two kinds of libel: libel per se and libel per quod. In statements that are libelous per se, falsity, malice, and injury are presumed and proof of these elements is not necessary. *Vinson v. Linn–Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115–16 (Iowa 1985). "An attack on the integrity and moral character of a party is libelous per se." *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 139 (Iowa 1996).

*Kiesau*, 686 N.W.2d at 175. Similarly, the Iowa Supreme Court has recognized that statements may constitute "slander per se." *Barreca*, 683 N.W.2d at 116 (cataloguing Iowa slander per se cases).

As I noted above, GKN argues that Newkirk's defamation claims fail because he has not alleged sufficient details of any allegedly defamatory statements. I agree. Newkirk's Amended Petition only contains allegations that, on some unspecified date, an employee, or employees, of GKN "made one or more announcements to GKN workers that someone had been terminated due to inappropriate conduct and described the Act."

Amended Petition at ¶ 37. Newkirk has failed to identify the speaker, the content of the allegedly defamatory statements, or their recipient. *See Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, No. 09–cv–00175, 2010 WL 2836949, at *7 (N.D. Iowa July 19, 2010) (concluding that Plaintiffs had pled their defamation claim with sufficient specificity where Plaintiffs had identified both the speaker and the recipient of the allegedly defamatory statements, as well as the statements' content). Therefore, Newkirk's allegations are insufficient to support his defamation claim. *See Freeman v. Bechtel Const. Co.*, 87 F.3d 1029, 1032 (8th Cir. 1996) (affirming dismissal of a slander claim where the allegations did "not identify the defamatory statements with any specificity, [did] not identify the manner of oral publication, and [did] not allege that [any agent of the defendant's acting within the scope of employment] published the statements to a non[-]privileged recipient"). Accordingly, this segment of GKN's Partial Motion for Summary Judgment is also granted.

### F. Newkirk's Negligence Claims

GKN next seeks summary judgment on Newkirk's negligence claims contained in Counts VIII and XIV. GKN argues that Newkirk's claim, in Count VIII, that GKN was negligent in failing to conduct an investigation of whether Newkirk used the phrase "nigger rig" in the workplace, fails because GKN did conduct an investigation and GKN did not owe a duty to Newkirk. Similarly, GKN contends that Newkirk's claim, in Count XIV, that GKN was negligent in failing to keep "information surrounding his termination confidential," fails because there is no duty to keep a termination confidential. Newkirk contends that he had a right to a prompt, confidential, diligent, fair, and just investigation. Newkirk argues that, because there are questions about when and how the investigation

was conducted, I should reserve ruling on this portion of GKN's motion until after discovery is completed.[13]

Newkirk does not dispute he was an at-will employee. As a consequence, GKN could fire him for any lawful reason or for no reason at all. *See Dorshkind v. Oak Park Place of Dubuque,* 835 N.W.2d 293, 300 (Iowa 2013); *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004); *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 82 (Iowa 2001); *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 219 (Iowa 1996); *Borschel v. City of Perry*, 512 N.W.2d 565, 566 (Iowa 1994).

The Iowa Supreme Court has recognized two exceptions to this rule: (1) if the discharge violates a "well-recognized and defined public policy of the state"; and (2) if a contract has been created by an employee handbook or manual, and the contract is somehow breached. *Borschel*, 512 N.W.2d at 566 (quoting *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988)). The Iowa Supreme Court has explicitly rejected a cause of action for negligent discharge, finding that imposing such a duty of care on employers "would radically alter the long recognized doctrine allowing discharge for any reason or no reason at all." *Huegerich*, 547 N.W.2d at 220. Newkirk claims that GKN owed him a duty of care to conduct a reasonable, non-negligent investigation prior to firing him. The flaw in his argument is that the Iowa Supreme Court has refused to recognize such a claim under Iowa law. *See Theisen*, 636 N.W.2d at 82. As the Iowa Supreme Court explained in *Theisen*:

> The weakness in Theisen's theory is that it still rests on a decision to terminate him, which Covenant could do for any lawful reason, or for no reason at all. Employment at-will, by definition, does not require an employer's decision to be logical or rational. Theisen's claim of negligent investigation goes to the heart of the employer's decision-making process.

---

[13]For the reasons discussed above in footnote 12, Newkirk's request that I delay consideration of this portion of GKN's motion until he has completed his discovery is denied.

> To allow such a claim would not only contravene this court's denial of a negligent discharge claim in *Huegerich*, but it would also create an exception swallowing the rule of at-will employment. *See Johnson v. Delchamps, Inc.*, 897 F.2d 808, 811 (5th Cir. 1990) (holding that because an employer could fire an employee for any reason or no reason "it was equally at liberty to discharge [the employee] for a reason based on incorrect information, even if that information was carelessly gathered" (footnote omitted)); *see also Morris v. Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66, 68 (1986) (rejecting wrongful discharge claim based on negligent investigation of criminal matter as public policy exception to doctrine of at-will employment).

*Id.*

There is no evidence that the Iowa Supreme Court is on the brink of recognizing the negligence cause of action Newkirk asks me to recognize here. Newkirk has not directed my attention to any Iowa case questioning the continued viability of the Iowa Supreme Court's rejection of a cause of action for negligent discharge. Newkirk's claims of negligent discharge/investigation run counter to the Iowa Supreme Court's decisions in *Theisen* and *Huegerich*, and are in direct conflict with Iowa's employment-at-will doctrine. Accordingly, this segment of GKN's Partial Motion for Summary Judgment is also granted.

### G. Newkirk's Claims of Negligent Infliction of Emotional Distress

Newkirk asserts three claims against GKN and/or unnamed GKN employees: for failing to investigate whether Newkirk said "nigger rig" in the workplace (Count IX); for lying about what Newkirk said (Count X), and for announcing that someone had been fired for using the phrase "nigger rig" in the workplace (Count XII). GKN seeks summary judgment on all three claims. GKN contends that Newkirk's claims fail as a matter of law because Newkirk was not physically injured, and he does not allege any facts sufficient to

meet any of the exceptions to the physical injury requirement. Newkirk counters that he alleges that he has suffered physical harm as a result of defendants' acts. He also argues that I should defer ruling on these claims until such time as discovery can be completed.[14] Finally, Newkirk argues that, to the extent that GKN's motion is addressing claims brought against John Does defendants, it should be denied.

In general, Iowa law recognizes a claim of negligent infliction of emotional distress only in cases where the plaintiff has suffered some physical injury. *Overturff v. Raddatz Funeral Servs., Inc.*, 757 N.W.2d 241, 245 (Iowa 2008) ("It is a well-established principle that, if a plaintiff has suffered no physical injury, she will ordinarily be denied recovery on a negligent infliction of emotional distress claim."); *see Lawrence v. Grinde*, 534 N.W.2d 414, 420 (Iowa 1995); *Millington v. Kuba*, 532 N.W.2d 787, 792-93 (Iowa 1995). "An exception to the denial of emotional distress damages in negligence actions unaccompanied by physical harm exists 'where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm.'" *Lawrence*, 534 N.W.2d at 420 (quoting *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990)). In *Lawrence*, the Iowa Supreme Court noted that it had previously recognized both a duty to use ordinary care to avoid causing emotional harm and, thus, an exception to the general requirement of physical injury in a claim of negligent infliction of emotional distress in the following four situations: (1) medical malpractice resulting from the negligent examination and treatment of a pregnant woman and premature fetus associated with the death of the fetus; (2) distress experienced by a son when he observed the negligence of another cause injury to his mother; (3) the negligent delivery of a telegram announcing the death of a loved one; and (4) the negligent performance of a contract to perform funeral services. *Lawrence*, 534 N.W.2d at 421.

---

[14]For the reasons discussed above in footnote 12, Newkirk's request that I delay consideration of this portion of GKN's motion until he has completed his discovery is denied.

GKN argues that Newkirk has not suffered any physical harm as a result of the defendants' conduct and, thus, his claims fall under the general rule for claims of negligent infliction of emotional distress. Further, GKN contends that Newkirk's situation does not come within any of the four exceptions to the general requirement of physical injury recognized by the Iowa Supreme Court to date. Reviewing the record in a light most favorable to Newkirk, I find that Newkirk has not generated a genuine issue of material fact that he suffered physical harm due to defendants' alleged actions underlying Newkirk's negligent infliction of emotional distress claims. Newkirk only alleges that: "Since Plaintiff was terminated, his health had deteriorated tremendously" and he "has experienced heart palpitations, high blood pressure, insomnia, headaches, and dizzy spells." Amended Petition at ¶ 43. Newkirk makes no allegations, nor has he directed me to any evidence in the summary judgment record, which would provide a causal connection between his physical injuries and defendants' alleged actions. Accordingly, summary judgment is also warranted with respect to Newkirk's claims of negligent infliction of emotional distress, and this segment of GKN's Partial Motion for Summary Judgment is also granted.

### H.    Newkirk's Intentional Infliction of Emotional Distress Claim

GKN next seeks summary judgment on Newkirk's intentional infliction of emotional distress claim. GKN argues that Newkirk's claim fails as a matter of law because Newkirk cannot prove that GKN employees committed an "outrageous act," a necessary element of such a claim under Iowa law.

To recover damages for intentional infliction of emotional distress, Newkirk must prove: "'(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) the plaintiff

suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress.'" *Smith v. Iowa State Univ.*, 851 N.W.2d 1, 26 (Iowa 2014) (quoting *Barreca v. Nickolas*, 683 N.W.2d 111, 123 (Iowa 2004) (quoting in turn *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 423 (Iowa 1997) (internal quotation marks omitted)); *accord Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 38 n. 3 (Iowa 1990); *Vaughn v. Ag. Processing, Inc.,* 459 N.W.2d 627, 635-36 (Iowa 1990); *Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976); *see also Eckles v. City of Corydon*, 341 F.3d 762, 769–70 (8th Cir. 2003) (applying Iowa law).

The Iowa Supreme Court has said that, when a plaintiff brings a claim of intentional infliction of emotional distress, "'it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous.'" *Smith*, 851 N.W.2d at 26 (quoting *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991); *Mills v. Guthrie Cty. Rural Elec.*, 454 N.W.2d 846, 849 (Iowa 1990); *M.H. ex rel. Callahan v. State,* 385 N.W.2d 533, 540 (Iowa 1986); *Reihmann v. Foerstner*, 375 N.W.2d 677, 681 (Iowa 1985); *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 118 (Iowa 1984); *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983). The Iowa Supreme Court has required an extreme of egregiousness to elevate (or downgrade) mere bad conduct to the level of outrageousness. *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 198 (Iowa 1985). For conduct to be outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cutler*, 473 N.W.2d at 183 (citing *Vaughn*, 459 N.W.2d at 636); *see Engstrom v. State*, 461 N.W.2d 309, 320 (Iowa 1990); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 801 (Iowa 1984) (quoting Restatement (Second) of Torts § 46 comment d (1965)). Indeed, the Iowa Supreme Court has observed that:

> [t]he tort law should encourage a certain level of emotional toughness. "The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must

> necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." RESTATEMENT (SECOND) OF TORTS § 46, comment d, supra. "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." *Magruder, Mental and Emotional Disturbance in the Law of Torts*, 49 HARV. L. REV. 1033, 1035 (1936).

*Northrup*, 372 N.W.2d at 198–99 (quoting *Meyer*, 241 N.W.2d at 918).

In reviewing the Iowa case law, it is evident that a showing of outrageousness is difficult to make. As I previously observed, "[i]t is a simpler matter to discover what kinds of behavior the Iowa Supreme Court has held insufficiently outrageous to sustain the tort than it is to find out what kind of behavior is sufficiently egregious." *Chester v. Northwest Iowa Youth Emergency Serv. Ctr*, 869 F. Supp. 700, 710–11 (N.D. Iowa 1994) (reviewing a long list of Iowa cases where courts found alleged conduct was not sufficiently outrageous, including *Cutler*, 473 N.W.2d at 183 (letter advising partner who had suffered from mental illness that he could not return to law practice without further review by partners was not extremely outrageous and did not generate genuine issue of material fact); *Engstrom*, 461 N.W.2d at 320 (negligent failure to search for plaintiffs' adopted daughter's natural father before placing her in plaintiffs' home, and telling adoptive parents father was dead without verifying his death, not outrageous); *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906, 911 (Iowa 1990) (insurance company's refusal to pay full amount of uninsured coverage not outrageous); *Mills*, 454 N.W.2d at 849 (rural electric cooperative's conduct in using split bolt connectors instead of compression connectors to connect grounding jumper wire to main neutral line, in failing to discover dangerous situation that such omission presented, and in conducting settlement negotiations through insurance carrier with cooperative customers who sustained fire damage not sufficiently outrageous)).

Newkirk's intentional infliction of emotional distress claim is premised on the allegation that a John Doe defendant falsely reported that Newkirk had used the phrase "nigger rig" at work with the intention of having Newkirk fired. Newkirk, however, has admitted that he has used, in whole or in part, the phrase, "nigger rig" or "nigger rigged." As a result, at most, a Joe Doe defendant is alleged to have informed on Newkirk with the intention of having Newkirk fired. I cannot find that "the whole of defendant's actions" in this case constituted "a course of conduct exceeding all bounds usually tolerated by decent society." *Blong v. Snyder*, 361 N.W.2d 312, 317 (Iowa Ct. App. 1984) (internal quotation marks omitted). Accordingly, this segment of GKN's Partial Motion for Summary Judgment is also granted.

## I. *Newkirk's Invasion of Privacy Claim*

Finally, I take up Newkirk's Invasion of Privacy claim. GKN argues that this claim fails as a matter of law because he cannot show the required elements for such a claim. Newkirk argues that I should reserve ruling on this segment of GKN's motion until such time as discovery is completed.

The Iowa Supreme Court first recognized the tort of invasion of privacy in *Bremmer v. Journal–Tribune Publ'g Co.*, 247 Iowa 817, 76 N.W.2d 762 (1956). *See Stessman v. American Black Hawk Broad. Co.*, 416 N.W.2d 685, 686 (Iowa 1987); *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 291 (Iowa 1979); *Winegard v. Larsen*, 260 N.W.2d 816, 822 (Iowa 1977). Since the recognition of the tort in *Bremmer*, the Iowa Supreme Court has adopted and applied the principles of invasion of privacy articulated in the Restatement (Second) of Torts. *See Kiesau v. Bantz*, 686 N.W.2d 164, 179 (Iowa 2004); *Stessman*, 416 N.W.2d at 686; *Lamberto v. Bown*, 326 N.W.2d 305, 309 (Iowa 1982); *Anderson v. Low Rent Housing Comm'n of Muscatine*, 304 N.W.2d 239, 248 (Iowa 1981); *Howard*, 283 N.W.2d at 291; *Winegard*, 260 N.W.2d at 822; *see also Hill v.*

*McKinley*, 311 F.3d 899, 905–06 (8th Cir. 2002). The Restatement principles the Iowa Supreme Court has adopted are found in § 652A and subsequent sections defining each form of the tort. Section 652A states as follows:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2) The right of privacy is invaded by
>
>> (a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or
>>
>> (b) appropriation of the other's name, or likeness, as stated in § 652C; or
>>
>> (c) unreasonable publicity given to the other's private life, as stated in § 652D; or
>>
>> (d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

RESTATEMENT (SECOND) OF TORTS § 652A.

The only one of the four types of invasion of privacy at issue here is the "publicity that unreasonably places the other in a false light before the public." RESTATEMENT (SECOND) OF TORTS §§ 652A, 652E. False light has been recognized by the Iowa Supreme Court, which has approved the elements for this cause of action as set out in the Restatement (Second) of Torts § 652E. *Kiesau*, 686 N.W.2d at 179; *Willson v. City of Des Moines*, 386 N.W.2d 76, 83 n. 8 (Iowa 1986). Under Iowa law, an invasion of privacy claim involving placing a person in false light occurs when

> "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Kiesau*, 686 N.W.2d at 179 (quoting *Winegard*, 260 N.W.2d at 823); *see Willson*, 386 N.W.2d at 83 n. 8 ("A claim for false light invasion of privacy is based upon an untruthful publication which places a person before the public in a manner that would be highly offensive to a reasonable person."). Specifically, the Restatement defines the tort of false light as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

RESTATEMENT (SECOND) OF TORTS § 652A. Although this tort "overlaps the law of defamation," *Winegard v. Larsen*, 260 N.W.2d 816, 823 (Iowa 1977), and requires proof of "untruthfulness," it is not necessary for the plaintiff to prove that he or she was defamed. *Anderson v. Low Rent Housing Comm'n of Muscatine*, 304 N.W.2d 239, 248 (Iowa 1981).

GKN contends that this claim must be dismissed because Newkirk cannot establish "publication" to a third party. The "publicity" requirement of a false light tort is explained in Restatement (Second) of Torts § 652D comment a. Specifically, comment a provides in pertinent part:

> *a. Publicity.* The form of the invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. . . . "Publicity" . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other

> means. It is one of communication that reaches or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

RESTATEMENT (SECOND) OF TORTS § 652D comment a. The element of "publicity" in a false light claim, therefore, differs from the element of "publication" in other defamation claims. The latter means any communication by the defendant to a third party; the former concerns communications made to the public at large. *See Brown v. O'Bannon*, 84 F. Supp.2d 1176, 1180–81 (D. Colo. 2000); *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1285 (N.D. Ill. 1996); *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1383 (D. Kan. 1996).

On this claim, GKN, as the moving party, has not met its initial responsibility of identifying those portions of the record which show a lack of a genuine issue. *See Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). The summary judgment record is absolutely devoid of information concerning the circumstances of the announcement made by GKN that it had fired a worker due to inappropriate conduct. Specifically, the text of the announcement is not in the summary judgment record. As a result, I cannot gauge the accuracy of GKN's announcement, nor determine whether Newkirk's identity was disclosed. Moreover, neither the names of those who heard the announcement, nor the audience size, is disclosed in the summary judgment record. Consequently, any consideration of Newkirk's invasion of privacy claim by me is premature. Accordingly, at this time, I deny GKN's motion without prejudice as to Newkirk's invasion of privacy claim.

### III.    CONCLUSION

Accordingly, for the reasons discussed above, defendant GKN's Motion For Partial Summary Judgment is granted as to Counts II, V, VI, VII, VIII, X, XI, XII, and XIV, and denied as to Count XIII.

**IT IS SO ORDERED**.

**DATED** this 9th day of March, 2016.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA